UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Hong Yin,                                                     Civil No. 08-6512 (JRT/FLN)

                    Plaintiff,

          v.                                                  **REPORT AND
                                                              RECOMMENDATION**

Denise M. Frazier, District Director, St. Paul
District Office, U.S. Citizenship and Immigration
Services, Emilio T. Gonzales, Director of U.S.
Citizenship and Immigration Services,  Michael
Chertoff, Secretary of the U.S. Department of
Homeland Security, Michael B. Mukasey, U.S.
Attorney General,

                    Defendants.
_____

Marcus A. Jarvis for Plaintiff.
Lonnie Bryan, Assistant United States Attorney, for Defendants.
_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on May 22,

2009 on the Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment [#4] and

Plaintiff's Motion to Compel Defendants to Answer Her Complaint; Motion for Summary Judgment,

and an Order Directed at CIS to Grant her USC [#9].  The matter was referred to the undersigned

for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.  For the reasons

which follow, this Court recommends Defendants' Motion [#4] be granted and Plaintiff's Motion

[#9] be denied.

I.        **FINDINGS OF FACT**

          Hong Yin is a Chinese citizen seeking to become a United States citizen through the

naturalization process. (Pet. at 1.)  She filed this lawsuit because she alleges that "[h]er petition for

naturalization has been unlawfully and unreasonably delayed." *Id.*  She alleges that this Court has

jurisdiction to hear her case under 8 U.S.C. § 1447(b) because, at the time she filed her Complaint, it had been more than 120 days since her naturalization examination and the United States Citizenship and Immigration Service ("USCIS") had not "adjudicated" her application. (Pet. at 2.)

Yin married Frank Kmiec, a U.S. citizen, on February 11, 2002. (Administrative Record (hereinafter "Record") at 18, 240.) She obtained her U.S. Permanent Resident card on September 28, 2005. On January 9, 2006, Frank Kmiec commenced employment with Fallon Neon, Shanghai, in China. (Record at 70.) Fallon Neon is a visual products corporation headquartered in Spartanburg, South Carolina. *Id.* Hong Yin moved to China on January 15, 2006 to live with her husband. (Record at 75.) She filed her application for naturalization on or about September 29, 2006 while she was living in China. (Pet. Ex. 1; R. at 122.)

Hong Yin was first interviewed by USCIS on January 31, 2007. (Pet. Ex. 5.) After the interview, USCIS requested the following: (1) proof that Frank Kmiec was still working for Fallon Neon; (2) a letter from Fallon Neon stating the relationship between its office in the U.S. and its office in China; (3) proof that Hong Yin and Frank Kmiec were still living in marital union; and (4) a signed written statement from Hong Yin stating that she intended to return to the United States after her spouse's employment was over in China. (Pet. Ex. 6.) In a letter to USCIS dated February 5, 2007, Hong Yin stated that she intended to move back to the United States with her husband "if and when his employment is finalized with Fallon Neon in Shanghai China." (Record at 75.)

Fallon Neon sent USCIS a letter on March 12, 2007 stating that Frank Kmiec's employment with the company had ceased on January 12, 2007, but that he would remain on the payroll until March 26, 2007. (Pet. Ex. 1; R. at 122.) In a decision dated March 28, 2007, USCIS denied Hong Yin's application for naturalization on the basis that Frank Kmiec's employment had ended with

Fallon Neon on January 12, 2007 and he was therefore no longer employed abroad by an American company. (Pet. Ex. 7.) Because Mr. Kmiec was no longer employed by an American company abroad, Hong Yin no longer qualified for exemption of the residency requirement under 8 U.S.C. § 1430(b). (*Id.*) On May 21, 2007, Hong Yin filed a request for a hearing with USCIS on the denial of her application. (Pet. Ex. 8.) Hong Yin was given a second interview with respect to this appeal, which was scheduled for November 13, 2007. (Pet. ¶ 16.) At the interview, Hong Yin testified that she and her husband were currently running a business in China which she owned before she was married. (Letter from USCIS field officer Denise M. Frazier to Hong Yin (February 19, 2009) (hereinafter "USCIS Letter") at 3 (denying her application for naturalization).) Hong Yin testified that she and her husband were operating two factories, one that manufactures synthetic leather and another that manufactures pigment. *Id.* Hong Yin testified that she and her husband remained in China after his employment with Fallon Neon ended and that they were currently running the manufacturing businesses. *Id.* at 4.

Plaintiff filed this lawsuit on December 31, 2008. (Pet. at 12.) USCIS denied her appeal in a letter dated February 19, 2009. (USCIS Letter at 1.)

## II.     STANDARD OF REVIEW

According to Federal Rule of Civil Procedure Rule 56, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In order to determine whether a certain fact is material, "it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 248

(1986).  Summary judgment will not be granted "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.  "The inquiry performed is the threshold inquiry of determining whether . . . there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Id*. at 250.

When determining whether to grant a motion for summary judgment, a court must view all of the facts in the light most favorable to the non-moving party and give the non-moving party the benefit of all reasonable inferences that can be drawn from those facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  When the moving party brings forth a proper summary judgment motion, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ.P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) ("Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c).")

## III.    LEGAL ANALYSIS

### A.    Jurisdiction.

The Government argued that this Court does not have jurisdiction because Plaintiff did not exhaust her administrative remedies before filing this lawsuit.  Plaintiff contends she filed this lawsuit because USCIS was unreasonably delaying its decision on her appeal.  At the time Plaintiff filed her lawsuit, her appeal before USCIS had been pending for over one year.  Plaintiff filed this lawsuit on December 31, 2008.  Roughly two months later on February 19, 2009, USCIS issued a

letter denying Plaintiff's appeal. At the hearing, the Government noted that, based on the face of the Complaint, Plaintiff's claim was moot because after she filed her Complaint, USCIS ruled on her appeal. The Government acknowledged however that Plaintiff could easily amend her Complaint to appeal USCIS' final ruling on her application. This Court has jurisdiction to hear such an appeal under 8 U.S.C. § 1421(c). This statute provides for de novo review by a United States district court of a naturalization application denied on appeal by USCIS. Under these circumstances, the Court concludes it has jurisdiction under § 1421(c). For the reasons that follow, however, the Court also concludes that Plaintiff's application must be denied.

## B.    Statutory Analysis.

The issue in this case is whether Hong Yin met the requirements of 8 U.S.C. § 1430(b), the statute which waives the residency requirements for naturalization.[1]

An applicant for naturalization must ordinarily reside in the United States for five years (or three if married to a United States citizen) prior to the date of application and must continue to reside in the United States until the time of admission to citizenship. 8 U.S.C. § 1427(a); 8 U.S.C. § 1430(a). These residency requirements are essentially waived for an applicant who is married to a United States citizen who is employed by an American company abroad. 8 U.S.C. § 1430(b). The statute provides that an applicant:

> (1) whose spouse is (A) a citizen of the United States, (B) in the employment of. . . an American firm or corporation engaged in whole or in part in the development of foreign trade and commerce of the United States, or a subsidiary thereof . . . and (C) regularly stationed abroad in such employment, and (2) who is in the United States at the time of naturalization, and (3) who declares before the Attorney General in

---

[1] Both parties filed motions for summary judgment. Because the issue is the same in both motions, the Court addresses it only once.

5

good faith an intention to take up residence within the United States immediately upon the termination of such employment abroad of the citizen spouse, may be naturalized upon compliance with all the requirements of the naturalization laws...

8 U.S.C. § 1430(b).  In this case, it is undisputed that Frank Kmiec is a citizen of the United States.

### 1.    Plaintiff's Husband Was Employed by a Subsidiary of an American Firm that met the Requirements of § 1430(b)(1)(B).

The Government disputes whether Mr. Kmiec was working for a "corporation engaged in whole or in part in the development of foreign trade and commerce of the United States or a subsidiary thereof" (Gov't Reply at 7.)  The Government contends that Mr. Kmiec's contractual obligation is to a Chinese company which is not a qualifying business under the statute.  (Gov't Reply at 7.)  A subsidiary corporation is "a corporation in which a parent corporation has a controlling share."  Black's Law Dictionary at 345.  The language of the statute does not require that the applicant's spouse work directly for an American company; the spouse may also work for a subsidiary thereof.  Further, the statute does not require that the subsidiary be organized under the laws of the United States.  Sufficient evidence exists in the record to conclude that Fallon Neon (Shanghai) Ltd. Co. is a subsidiary of Fallon Neon.  In a letter dated March 26, 2007, the Vice President of Fallon Neon in the United States wrote a letter to USCIS stating that "Frank Kmiec was hired by Fallon Neon in January 2006 and relocated to Shanghai China by Fallon.  Frank is the General Manager of our Fallon Shanghai manufacturing facility."  (Record at 72.)  The Government's argument that Mr. Kmiec was not employed by a company that met the requirements of § 1430(b)(1)(B) must be rejected.

### 2.    Plaintiff's Husband's Term of Employment Did Not Meet the Timing Requirements of § 1430(b).

The issue here is whether the applicant's spouse must retain employment abroad through

the date on which the applicant is naturalized. The application process to become naturalized

can take several months, even years. The process generally entails the submission of an

application, an interview with USCIS and, if the application is accepted, a naturalization

ceremony. In Plaintiff's case, she submitted her application on September 29, 2006. Her

interview did not take place until four months later on January 31, 2007. On the day of her

interview, Plaintiff's husband did not meet the requirements of the statute, although he did meet

those requirements four months earlier when she submitted her application for naturalization.

Hong Yin contends that her husband was only required to meet the employment

requirements at the time she applied for naturalization on September 29, 2006. The Government

takes the position that her husband was required to meet the statutory requirements at least until

the day of naturalization.

### a.  Statutory Interpretation.

"[I]t has been universally accepted that the burden is on the alien applicant to show his

eligibility for citizenship in every respect," *I.N.S. v. Pangilinan*, 486 U.S. 875, 886 (1988)

(quoting *Berenyi v. District Director, INS*, 385 U.S. 630, 637 (1967)). "In stark contrast to

deportation proceedings, in which the 'rule of lenity' dictates that ambiguities in the deportation

statutes be construed in favor of aliens, courts in naturalization proceedings 'generally construe

ambiguities to the benefit of the government.'" *Singh v. Gantner*, 503 F.Supp.2d 592, 595

(E.D.N.Y. 2007) (quoting *Puello v. Bureau of Citizenship and Immigration Servs.*, 418

F.Supp.2d 436, 438 (S.D.N.Y. 2005).

The statute is somewhat unclear as to when, during the naturalization process, the

applicant's spouse must satisfy the requirements of § 1430(b). The statute, written in the present

tense, states that any person whose spouse is employed abroad by an American company "may be naturalized upon compliance with all the requirements of the naturalization laws . . ." *Id.* The statute does not distinguish between the date of application, the date of the interview or the date of naturalization. The use of the present tense tends to suggest that the requirements of the statute must be met at the time of naturalization. Further, an applicant is required by section 1430(b) to declare before the Attorney General a good faith intention to return to the United States upon the termination of her husband's employment abroad. The section that requires the declaration assumes that, at the time the decision to grant the application for naturalization is made, the spouse is still employed abroad and that the spouse's employment will terminate sometime after naturalization. Given the way in which the statute is structured coupled with presumption that ambiguities should be construed in favor of the Government, the Court concludes that the statute requires a spouse meet the employment requirements of § 1430(b) on the date of naturalization. In this case, because Plaintiff's spouse's employment was terminated even before Plaintiff had her interview with USCIS, his employment does not exempt Plaintiff from the residency requirements.

        **b.**       **The cases cited by Plaintiff are not on point.**

Plaintiff contends that *Ali v. Smith* stands for the proposition that an applicant's spouse need only been employed abroad on the date of the application in order to qualify the applicant for exemption of the residency requirement under 28 U.S.C. § 1430(b). 39 F.Supp.2d 1254, 1256 (W.D. Wash. 1999). The issue in that case was whether the plaintiff was required to live with her husband at the time of the interview under 8 U.S.C. § 1430(a) which states that "immediately preceding the date of filing" of the application, the applicant must have resided

with his or her citizen spouse for three years. *Id.* at 1255. The court concluded this language did not require the applicant to be living with her citizen spouse at the time of the interview. *Ali* dealt with a different statute section than the one at issue here. The language of 8 U.S.C. § 1430(b) (that statute section at issue in this case) does not have similar language to that of part (a). It does not specify when the applicant's spouse must meet the requirements of the statute.

*In re Sugarek*, is also not on point. 77 F.Supp 998 (N.D. Cal. 1947). The issue in that case was whether the applicant's citizen spouse, who was employed by the United States Military, was "regularly stationed abroad" under the statute when his employment sent him sporadically to other countries for a number of years interspersed with periods of time living in the United States. The court concluded that the spouse's employment was "regular." The court concluded that the legislative intent of the statute was "to permit the naturalization of spouses, where employment abroad is in good faith, substantial in character, pursuant to arrangement, and of a steady and orderly nature as a part of a prescribed and fixed service, as distinguished from a type of employment which involves some casual or temporary visit to a foreign country." *Id.* at 1000.

In this case, the issue is not whether the employment of Plaintiff's spouse was of the proper nature such that it can be considered "regular" under the statute. Mr. Kmiec's employment with Fallon Neon appeared to be in good faith, was substantial in character in that he was to manage a factory, was pursuant to an arrangement in that he was hired by the company before moving to Shanghai, and was steady for the term of the contract. The issue in this case is whether the applicant's spouse must retain this regular employment through the time the applicant is naturalized. In *Sugarek*, the applicant's spouse was employed with the military the

entire time he was moving between the United States and other countries. The court in that case does not state that his employment with the military was terminated at any time; the issue was whether his physical location in the United States while still employed by the military meant that, under the statute, his employment "abroad" was no longer "regular." This case, on the other hand, deals with a situation in which the spouse's employment was definitively terminated prior to the applicant's interview with USCIS. The issue here is not the *nature* of the spouse's work and whether it can be considered *regular* under the statute, but whether the spouse's employment must continue through the naturalization application process.

It is clear, that under the statute, there is a difference between the nature of the employment (i.e., whether or not it is "regular") and the termination of the employment because the statute requires the applicant to declare in good faith that, upon the termination of the spouse's employment aborad, he or she will return to the United States.

Because Plaintiff's spouse was not employed by Fallon Neon long enough to exempt Plaintiff from the residency requirement, her application for naturalization must be denied without prejudice. Nothing in this Report and Recommendation prevents Plaintiff from re-applying for naturalization.

## IV. RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment [#4] be **GRANTED**.

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Plaintiff's Motion to Compel Defendants to Answer Her Complaint;

Motion for Summary Judgment, and an Order Directed at CIS to Grant her USC [#9] be

**DENIED**.


DATED: July 2, 2009                                              s/ *Franklin L. Noel*
                                                                 FRANKLIN L. NOEL
                                                                 United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **July 20, 2009**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **July 20, 2009,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.