UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| HONG YIN, | ) | CIV. 10-5013-JLV |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER DISMISSING CASE |
| | ) | |
| DENISE FRAZIER, District | ) | |
| Director, Saint Paul District Office, | ) | |
| U.S. Citizenship and Immigration | ) | |
| Services; EMILIO T. GONZALEZ, | ) | |
| Director, U.S. Citizenship and | ) | |
| Immigration Services; | ) | |
| MICHAEL CHARTOFF, Secretary of | ) | |
| U.S. Department of Homeland | ) | |
| Security; and MICHAEL B. | ) | |
| MUKASEY, United States Attorney | ) | |
| General, | ) | |
| | ) | |
| Defendants. | ) | |

**INTRODUCTION**

On December 31, 2008, plaintiff Hong Yin, a Chinese citizen and a lawful permanent resident of the United States, filed her petition requesting that she be granted the rights and benefits of becoming a naturalized citizen of the United States. (Docket 1). The principal basis for plaintiff's claim is that her application for naturalization remained unresolved with the Citizenship and Immigration Services in violation of applicable federal law and that she is entitled to the court's determination that she is qualified for citizenship. Id. For the reasons stated below, the petition is dismissed without prejudice.

## FACTS AND PROCEDURAL HISTORY

Plaintiff's case was originally filed in the United States District Court for the District of Minnesota. After that court determined it lacked jurisdiction, plaintiff's case was transferred to the Western Division of the District of South Dakota for final resolution. (Docket 33). This court allowed plaintiff an opportunity to amend her complaint or file any supplemental pleadings pursuant to 28 U.S.C. § 1653, on or before June 14, 2010. (Docket 41). Plaintiff chose to have her case decided on the present record. (Docket 42).

The material facts are not in dispute. The material facts identified by United States Magistrate Judge Franklin L. Noel in his report and recommendation (Docket 25) were not challenged. United States District Judge John R. Tunheim rejected the report and recommendation on procedural grounds. (Docket 33). Neither the plaintiff's objections (Docket 28) nor the defendants' objections (Docket 31) to the report and recommendation raised significant factual errors by the magistrate judge. This court adopts the findings of the magistrate judge, except where noted otherwise, as its own findings.

Hong Yin is a Chinese citizen seeking to become a United States citizen through the naturalization process. (Docket 1). Ms. Yin married Frank Kmiec, a United States citizen, on February 20, 2002. Id. at p. 2. She obtained her United States permanent resident card on September 28, 2005. (Docket 1-2, p. 1).

Mr. Kmiec started his employment with Fallon Neon, in Shanghai, China, on January 9, 2006. (Docket 1-2, p. 2 and Administrative Record ("AR") p. 70).

Mr. Kmiec was the general manager of that manufacturing plant. (Docket 1-2, p. 2). Fallon Neon is a visual products corporation headquartered in Spartanburg, South Carolina. (AR p. 70). Yin moved to Shanghai, China, on January 15, 2006, to live with her husband. (AR p. 75). On September 29, 2006, she filed her application for naturalization while living in China. (AR pp. 122-23).

Hong Yin was first interviewed by United States Citizenship and Immigration Services ("CIS") on January 31, 2007. (Docket 1-2, p. 6). During the interview, Ms. Yin "passed the English language and American history examinations, and . . . established her good moral character and attachment to the principles of the United States." Id. p. 13. After her interview, CIS requested five items of her. Id. p. 8. Those items are summarized as follows:

1. Proof that Mr. Kmiec was still working for Fallon Neon and at what location;

2. A copy of his employment contract;

3. A letter from Fallon Neon stating the relationship between its office in the United States and its office in China;

4. Proof that Ms. Yin and Mr. Kmiec were still living in a marital union; and

5. A signed written statement from Ms. Yin stating that she intended to return to the United States after her spouse's employment ended in China.

Id. (summarized).

In a letter to CIS dated February 5, 2007, Ms. Yin stated she intended to move back to the United States with her husband "if and when his employment is finalized with Fallon Neon in Shanghai China." (AR p. 75). Fallon Neon sent a letter to CIS on March 12, 2007, stating that Mr. Kmiec's employment with the company ended on January 12, 2007, but that he would remain on the payroll until March 26, 2007. (Docket 16). See also AR p. 122.

CIS denied Ms. Yin's application for naturalization on March 28, 2007. (Docket 1-2, pp. 10-11). CIS made that decision because Mr. Kmiec was no longer employed by American-based Fallon Neon in Shanghai, China, and Ms. Yin was "statutorily ineligible for naturalization under Section 319(b) of [the Immigration and Nationality Act]." Id. On May 21, 2007, Hong Yin filed a request for a hearing with CIS on the denial of her application. (Docket 1-2, pp. 12-17). She filed this request because she "believes that she met the statutory guidelines in submitting her application for naturalization." Id. p. 12.

CIS conducted a second interview of Ms. Yin on November 13, 2007.[1] (Docket 1 ¶ 16). During that interview, Ms. Yin explained that after her husband's employment with Fallon Neon ended they left China on February 9, 2007, went to Brazil, and then returned to the United States on October 29,

---

[1] Ms. Yin's attorney was apparently present during that interview as the handwritten notes reflect "atty claims statutory guidelines were met at time of filing." (Docket 31-3, p. 2).

2007. She also indicated they had a ticket to leave the United States on November 14, 2007. (Docket 31-3, p. 1).

Ms. Yin testified that she and her husband were currently "self-employed" and operating a business in China which she owned since before her marriage to Mr. Kmiec.[2] Id. at p. 2. See also Docket 15, p. 3. Ms. Yin testified that she and her husband were operating two factories–one that manufactures synthetic leather and another that manufactures pigment. Id. Ms. Yin testified she and her husband remained in China after his employment with Fallon Neon ended and they were currently running the manufacturing businesses. (Docket 15, p. 4). Mr. Kmiec "has no ownership interest in her family business." (Docket 28, p. 2). She identified their United States address as that of her husband's father in Rapid City, South Dakota. (Docket 31-3, p. 2).

---

[2]Ms. Yin denies she told CIS that she and her husband remained in China to run that business. (Docket 28, p. 2). She claims "[a]fter the Petitioner's husband's employment was terminated in China they moved back to the USA for a very brief period of time. Due to the state of the economy in the USA today, the Petitioner's husband got a new assignment in China. The assignment is from a United States Company which is based in the State of Wisconsin and has a subsidiary/affilliated company in China." (Docket 28, p. 1). This allegation is not properly before the court as plaintiff chose to request resolution of her claim on the record and without a *de novo* hearing. (Docket 42).

Because CIS failed to timely rule on Ms. Yin's appeal, she filed her petition in federal court on December 31, 2008. (Docket 1). CIS denied Ms. Yin's appeal on February 19, 2009. (Docket 15). The reasons for the denial are summarized as follows:

1. Five years after she became a permanent resident Ms. Yin would qualify for naturalization under Section 315 of the Immigration and Nationality Act. She became a permanent resident on September 28, 2005, so her first qualifying date for naturalization would be September 28, 2010. A date which had not yet arrived.

2. Under Section 319(a) the waiting period would only be three years, that is, September 28, 2008, but the employment abroad exception did not apply to her situation because Mr. Kmiec was employed by a foreign corporation and not a subsidiary of an American corporation.

Id. at pp. 3-4. That denial was without prejudice to the right of Ms. Yin to file a new application in the future. Id. at 4.

## ANALYSIS

Ms. Yin filed this lawsuit because as she alleges "[h]er petition for naturalization has been unlawfully and unreasonably delayed." (Docket 1, ¶ 2). Her petition alleges the federal district court has jurisdiction "under 8 U.S.C. § 1447(b) . . . because the United States Citizenship and Immigration Service ("USCIS") has failed to adjudicate the application despite the passage of more than 120 days since the Petitioner's naturalization examination." Id. at ¶ 4. Ms. Yin also asserted jurisdiction under 28 U.S.C. § 2201, the Declaratory

Judgment Act, to "order the Defendants to promptly adjudicate . . . the currently pending application for naturalization." Id. ¶ 4 and p. 11. As indicated above, approximately two months after Ms. Yin filed her petition in federal district court in Minnesota, CIS denied Ms. Yin's appeal after determining she did not satisfy the § 1430(b) requirements. (Docket 15).

As Magistrate Judge Noel concluded in his report and recommendation, Ms. Yin's claim was moot because CIS ruled on her appeal. (Docket 25, p. 5). However, she could still amend the complaint and appeal the CIS final ruling under 8 U.S.C. § 1421(c). Id. Ms. Yin did not move to amend her petition in the Minnesota action, and similarly chose not to accept this court's invitation to amend her complaint. (Docket 41). Rather, she chose to have her case decided on the present record. (Docket 42).

The court may exercise jurisdiction over a naturalization application only in two circumstances:

1. Pursuant to 8 U.S.C. § 1447(b), if 120 days have passed since the initial interview under 8 U.S.C. § 1446 and CIS has not made a determination on the application for naturalization; or

2. Pursuant to 8 U.S.C. § 1421(c), after a naturalization application has been denied by CIS, an applicant may file a timely N-336 request for a hearing under 8 U.S.C. § 1447(a), and the request is denied.[3]

---

[3]Ms. Yin never amended her petition to assert federal jurisdiction under 8 U.S.C. § 1421(c). Thus, jurisdiction in this court may not be premised on that section.

7

Section 1447(b) provides:

> (b) Request for hearing before district court
>
> If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. <u>Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter</u>.

8 U.S.C. § 1447(b) (emphasis added).

The defendants cite <u>Al Hamati v. Gonzalez</u>, No. 4:09CV00676 ERW, 2010 WL 623716 (E.D. Mo. Feb. 18, 2010) for the proposition that once CIS has acted on the naturalization application, a petitioner no longer may bring an action under § 1447(b). (Docket 44, p. 4). However, <u>Hamati</u>'s facts are not similar to the facts presently before the court. In <u>Hamati</u>, CIS took more than 120 days before issuing its decision, but that decision was made more than five years before he filed his petition in federal court. <u>Hamati</u>, 2010 WL 623716 *3. Of interest in the present analysis is the <u>Hamati</u> court's observation on the status of the law in the Court of Appeals for the Eighth Circuit.

> Although the Eighth Circuit has yet to weigh in on the issue, other courts of appeals considering the effect of § 1447(b) have found that it grants exclusive jurisdiction to the district courts, meaning that once a district court has assumed jurisdiction under that provision, CIS no longer has any authority to take action on a naturalization application. *See, e.g.,* <u>Bustam[a]nte v. Napolitano</u>, 582 F.3d 403,

> 407-08 (2d Cir. 2009); Etape v. Chertoff, 497 F.3d 379, 384 (4th Cir. 2007); Hovsepian, 359 F.3d at 1159.[4]

Id. at n. 5.

This court is inclined to accept the logic and rationale used by the court in Bustamante to resolve Ms. Yin's jurisdictional issue:

> When the 120-day period following the initial examination of an applicant has passed, Section 1447(b) contemplates something like a system of concurrent jurisdiction. . . . the naturalization applicant, who has an application pending before USCIS beyond the 120-day period, has the option pursuant to Section 1447(b) to continue with proceedings before USCIS or to bring the application before the district court. If the naturalization applicant chooses to do nothing, the application will remain pending before USCIS with the agency maintaining jurisdiction to decide the application. If the naturalization applicant chooses instead to file a Section 1447(b) petition with the district court, then the district court will have jurisdiction to decide the application or remand to USCIS.

Bustamante, 582 F.3d at 407 (internal citation omitted). But once a "naturalization applicant chooses to file a Section 1447(b) petition, the district court acquires jurisdiction that is 'exclusive' in the sense that USCIS is no longer empowered to decide the application." Id.

> In holding that the district court possesses exclusive jurisdiction to decide a naturalization petition as to which a Section 1447(b) complaint has been filed, we do not suggest that upon the applicant's invocation of a district court's Section 1447(b) jurisdiction, USCIS is barred from continuing its consideration of the naturalization application or from reaching a tentative determination. Certain practical realities might support such agency action. Section 1447(b) is triggered, after all, by agency delay. No one's interest are [sic]

---

[4]United States v. Hovsepian, 359 F.3d 1144 (9th Cir. 2004) (*en banc*).

9

> served by compelling further delay.  Inevitably, the district court will solicit the parties' views on a Section 1447(b) petition before determining whether to reach the merits of the application or remand to the agency. The parties will likely stipulate to a remand if USCIS tentatively recommends that an application be granted. Even with applications that USCIS intends to deny and for which no stipulation would be expected, USCIS is entitled to request a remand.  Thus, a system of district court/agency cooperation where, even upon the former's acquisition of jurisdiction, the latter continues its consideration of a matter, but requires court permission before it can put any decision into effect, may make sense.  Such coordination is not unprecedented.

Id.  This system allows the court "flexibility" to decide the case or remand to the agency.  Id. at 408.  "But, at the same time, district courts are required to exercise their jurisdiction when presented with a properly filed Section 1447(b) petition. . . . The statute envisions a system that conditions USCIS's authority to decide a naturalization application . . . on the district court's determination that a remand is appropriate under the circumstances." Id. at 408-09.  "[T]he language of Section 1447(b) demonstrates that Congress intended USCIS's failure to act on a naturalization application within 120 days of the initial interview to have a consequence–namely, that an applicant's petition to the district court beyond the 120-day period would divest USCIS of jurisdiction." Id. at 409.

Rather than request a *de novo* hearing before this court, Ms. Yin chose to have a decision made on her naturalization application based on the present record.  (Docket 42).  Thus, the court has before it the same evidence presented to CIS.  The undisputed facts are those stated above.  The only question is

whether the court arrives at the same legal conclusion as did CIS on Ms. Yin's application.

Section 319(b) of the Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq.*, provides, in pertinent part, as follows:

> (b) Any person, (1) whose spouse is (A) a citizen of the United States, (B) in the employment of . . . an American firm or corporation engaged in whole or in part in the development of foreign trade and commerce of the United States, or a subsidiary thereof, . . . and (C) regularly stationed abroad in such employment, and (2) who is in the United States at the time of naturalization, and (3) who declares before the Attorney General in good faith an intention to take up residence within the United States immediately upon the termination of such employment abroad of the citizen spouse, may be naturalized upon compliance with all the requirements of the naturalization laws . . . .

8 U.S.C. § 1430(b). When interpreting any federal statute, the court must first examine the statutory text. Hovsepian, 359 at 1159. In completing that evaluation, the court should give "substantial deference to . . . [the] interpretation of statutes and the regulations administered by the agency." Azie v. Holder, 602 F.3d 916, 919 (8th Cir. 2010).

Title 8, Code of Federal Regulations, Part 319.2, provides in pertinent part:

> (a) Eligibility. To be eligible for naturalization under [8 U.S.C. § 1430(b)], the alien spouse of a United States citizen must:
>
> (1) Establish that . . . her citizen spouse satisfies the requirements under section [1430(b)], including that he . . . is regularly stationed abroad. For purposes of this section, a citizen spouse is regularly stationed abroad if he . . . proceeds abroad, for a period of not less

11

> than one year, pursuant to an employment contract or orders, and assumes the duties of employment;
>
> (2) At the time of examination on the application for naturalization, be present in the United States pursuant to a lawful admission for permanent residence;
>
> (3) At the time of naturalization, be present in the United States;
>
> (4) Declare in good faith, upon naturalization before the Service, an intention:
>
>> (i) To reside abroad with the citizen spouse; and
>> (ii) To take up residence within the United States immediately upon the termination of the citizen spouse's employment abroad;
>
> . . . .

8 C.F.R. Part 319.2(a).

As part of the review of Ms. Yin's naturalization application, CIS properly inquired as to the status of Ms. Yin's spouse to determine whether he, in fact, qualified as a employee of a United States based company overseas. Ms. Yin has the burden of proof as to her qualifications for naturalization. I.N.S. v. Pangilinan, 486 U.S. 875, 886 (1988) ("[I]t has been universally accepted that the burden is on the alien applicant to show [her] eligibility for citizenship in every respect . . . .").

It was while her application for naturalization was under review that CIS learned Ms. Yin's spouse was no longer employed by Fallon Neon. She also disclosed to CIS that she and her husband remained in China, after his employment with Fallon Neon ended, to manage two Chinese owned factories.

Section 1430(b) contemplates the applicant's citizen spouse be employed by an American firm, both at the time of her application for naturalization and at the time of acceptance for naturalization. If the citizen spouse is relieved of that foreign employment, the applicant must immediately return and intend to remain in the United States through naturalization. To interpret § 1430(b) otherwise would allow an applicant to have a citizen spouse employed by an American firm in a foreign county on the date of application, leave that employ the next day, and permit the applicant to live in a foreign county up to the date of naturalization. That is not a reasonable statutory interpretation of § 1430(b) or Part 319.2.

Ms. Yin has not satisfied the requirements of § 1430(b) as implemented by 8 C.F.R. Part 391.2(a)(1) and (a)(4)(ii). Thus, Ms. Yin is no longer qualified for naturalization under 8 U.S.C. § 1430(b).[5]

## ORDER

Based upon the above analysis, it is hereby

ORDERED that the petition for naturalization (Docket 1) is denied without prejudice.

IT IS FURTHER ORDERED that the petition for declaratory relief (Docket 1) is denied as moot.

---

[5]This conclusion is consistent with the ultimate decision made by CIS on February 19, 2009.

IT IS FURTHER ORDERED that petitioner's application for attorney fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, (Docket 1) is denied.

Dated April 12, 2010.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE